**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kim A. Vega,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-01552-PHX-DWL<br><br>**ORDER** |

At issue is the denial of Plaintiff Kim Vega's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 14, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 16, "Def.'s Br."), and Plaintiff's Reply (Doc. 19, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, R.) and now reverses the Administrative Law Judge's decision (R. at 17–45) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed her Application on March 31, 2015, for a period of disability beginning June 30, 2014. (R. at 200.) Plaintiff's claim was denied initially on June 12, 2015 (R. at 24), and on reconsideration on September 30, 2015 (R. at 24). Plaintiff then testified at a hearing held before an Administrative Law Judge ("ALJ") on June 12, 2017. (R. at 24.) On November 6, 2017, the ALJ denied Plaintiff's Application. (R. at 21–33.)

On March 26, 2018, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–4.) The present appeal followed.

The Court has reviewed the medical evidence and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ found that Plaintiff has the following severe impairments: (1) lumbar and cervical degenerative disc disease, status post three surgeries; (2) osteoarthritis (or degenerative joint disease), status post bilateral total knee arthroplasty; (3) fibromyalgia; and (4) obesity. (R. at 26.)

Ultimately, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404." (R. at 28.) The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except she can occasionally kneel, crawl, and climb ramps, stairs, or ladders; never climb ropes or scaffolds; and frequently balance, stoop, crouch, and reach overhead bilaterally." (R. at 28.) Additionally, the ALJ found Plaintiff "must avoid concentrated exposure to extreme cold, humidity, and hazards such as heights and machinery." (R. at 28.) Based on a Vocational Expert's ("VE") answer to a hypothetical question, the ALJ concluded that Plaintiff could perform her past work as a probation and parole officer and is not disabled under the Act. (R. at 32–33.)

## II. LEGAL STANDARD

The Court addresses only the issues raised by the claimant in the appeal from the ALJ's decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001). The Court should uphold the ALJ's decision "unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than

a preponderance." *Id.* Put another way, "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court should uphold the ALJ's decision "[w]here evidence is susceptible to more than one rational interpretation," but the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citations and internal quotation marks omitted).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). "[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Id.* (citations and internal quotation marks omitted). The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* Importantly, however, the Court may not uphold an ALJ's decision on a ground not actually relied on by the ALJ. *Id.* at 1121.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can

perform any other work based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled.

## III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by rejecting the medical opinion of Plaintiff's treating physician, instead relying on the opinions of nonexamining physicians; and (2) the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony. (Pl.'s Br. at 1.)

### A. The ALJ Erred by Giving Little Weight to the Medical Opinion of Plaintiff's Treating Physician and Instead Giving Great Weight to the Opinions of the Nonexamining State Agency Medical Consultants

Although "[t]he ALJ must consider all medical opinion evidence," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), there is a hierarchy among the sources of medical opinions. Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* This is so because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

Given this hierarchy and a treating physician's position at the top if it, an ALJ may reject uncontroverted evidence from that source "only for 'clear and convincing' reasons." *Lester*, 81 F.3d at 830. Also, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (citation omitted). Normally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating

physician." *Id*. at 831. But where "the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating physician may itself be substantial evidence." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). When that is the case, an ALJ can satisfy his burden of providing specific and legitimate reasons "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir. 1989); *see also Embrey*, 849 F.2d at 421–22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

Here, one of Plaintiff's treating physicians is Dr. Wang, an orthopedic surgeon whom Plaintiff saw at least thirteen times between November 2014 and April 2017 regarding pain in her neck, arms, back, and legs. (R. at 367, 371, 389, 466, 470, 473, 623, 630, 634, 638, 643, 647, 651.) In February 2015, Dr. Wang performed surgery on Plaintiff's cervical spine to relieve neck pain. (R. at 389.) Still, in December 2015, Dr. Wang concluded that, among other limitations, Plaintiff suffered from "severe" pain and fatigue—defined as an extreme impairment of ability to function (greater than 15% off task). (R. at 509.) In the following months, although Plaintiff's neck and arm pain appeared "stable" (R. at 650), Plaintiff's back pain persisted (R. at 647). And, after Dr. Waldrip performed lumbar fusion surgery on Plaintiff in September 2016, Plaintiff's neck and arm pain returned. (R. at 651.)

The ALJ assigned "little weight" to Dr. Wang's opinion for three reasons. (R. at 31.) First, the ALJ held that Dr. Wang's opinion deserved increased scrutiny because it was given in the context of the worker's compensation claim system, in which, according to the ALJ, it is not uncommon for a treating physician to describe "excessive limitations to enhance the claimant's financial recovery." (R. at 31.) Second, the ALJ held that Dr. Wang's opinion was not supported by the medical evidence; specifically, Plaintiff had "largely intact upper and lower extremity strength, a general lack of upper extremity radiculopathy, somewhat effective pain control, and frequently normal gait." (R. at 31.)

Third, the ALJ discounted Dr. Wang's opinion because it was in "significant" conflict with the opinions from each of the state agency medical consultants, who reviewed "much" of the record and, according to the ALJ, were "practiced at formulating functional limitations based on a review of relevant evidence." (R. at 31.)

These reasons for rejecting Dr. Wang's opinion were not legitimate or supported by substantial evidence. First, the ALJ provided no basis for his assertion that treating physicians in the worker's compensation system often exaggerate their patients' limitations in an effort to enhance financial recoveries. Moreover, the ALJ did not point to any evidence in the record suggesting that Dr. Wang had exaggerated Plaintiff's limitations in this case.

Second, the ALJ failed to review the whole record in determining that Dr. Wang's opinion was unsupported by the medical evidence. An ALJ must review the whole record and not cherry-pick evidence to support his or her findings. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001). The whole record shows that Plaintiff consistently complained of severe pain that limited her daily activities (R. at 367, 371, 389, 466, 470, 473, 577, 579, 623, 630, 634, 638, 643, 647, 651), and even when Plaintiff experienced some relief from her symptoms (R. at 577, 581, 650), the record shows the severe pain returned (R. at 577) and spread (R. at 651). For example, after finding relief from surgery (R. at 650), physical therapy (R. at 577), and injections in both her trochanteric bursae (R. at 581-582), Plaintiff later complained of severe pain in her thigh, calf, neck, and arms (R. at 577, 651).

Third, the mere existence of controverting opinions is not a legally sufficient reason to reject the opinion of a treating physician. As noted above, if the treating physician's opinion is controverted by a nonexamining physician, the ALJ may disregard it only after setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *See also Lester*, 81 F.3d at 831 ("The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician."). Nonexamining physicians'

greater familiarity with the Social Security system is not such a reason. Moreover, neither of the nonexamining state agency medical consultants, on whose opinions the ALJ relies, reviewed Plaintiff's records after Plaintiff underwent lumbar fusion surgery.

### B. The ALJ Failed to Give Sufficient Reasons to Discount Plaintiff's Symptom Testimony

Plaintiff also argues the ALJ erred by rejecting her symptom testimony. (Pl.'s Br. at 14-19.) Although credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler, v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal citations omitted).

The ALJ failed to do so here. First, the ALJ erred when he found Plaintiff's activity level was not consistent with Plaintiff's allegations of disability. (R. at 29.) Specifically, the ALJ observed that Plaintiff drove her own vehicle, shopped, picked up prescriptions, saw her fiancé daily, managed her own personal care and hygiene, and performed some household chores. (R. at 29.) But "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits," *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), and "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ did not provide a sufficient rationale to explain *how* Plaintiff's reported occasional activity was inconsistent with her symptoms.

The ALJ also erred when he rejected Plaintiff's testimony regarding the severity of her pain, citing a lack of support in the record. (R. at 29-30.) Once the Plaintiff has produced medical evidence of an underlying impairment that is reasonably likely to be the cause of the alleged pain, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective

medical evidence to fully corroborate the alleged severity of pain."). The ALJ acknowledged Plaintiff's medically-determinable impairments could reasonably be expected to cause the symptoms Plaintiff alleged. (R. at 29.) Thus, the ALJ erred in questioning the reported severity of Plaintiff's pain based solely on a lack of medical evidence in the record.

### C. The Credit-as-True Rule Applies

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl.'s Br. at 23-24.) The credit-as-true rule only applies in cases that raise "rare circumstances" which permit the Court to depart from the ordinary remand rule under which the case is remanded for additional investigation or explanation. *Treichler,* 775 F.3d at 1099-1102. These rare circumstances arise when three elements are present. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence or claimant testimony. *Id*. at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are considered useful when there are conflicts and ambiguities that must be resolved. *Id.* Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

In this case, the credit-as-true rule applies. As discussed above, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician—who identified limitations inconsistent with Plaintiff's ability to perform sustained work—and Plaintiff's symptom testimony. If this evidence is properly credited, the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve. Moreover, considering the record as a whole, including Plaintiff's testimony as to her pain and the VE's testimony that an individual capable of light work who also suffers from

| | |
|---|---|
| 1 | severe pain could not obtain full-time work in a competitive environment (R. at 86), the |
| 2 | Court is left with no doubt that Plaintiff is disabled under the Act. *Garrison*, 759 F.3d at |
| 3 | 1022–23; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 & n.12 (9th Cir. 2007). |
| 4 | Accordingly, **IT IS ORDERED** that the final decision of the Commissioner of |
| 5 | Social Security is **vacated**, that this case is **remanded** for a calculation of benefits, and |
| 6 | that the Clerk shall enter judgment accordingly and **terminate** this case. |
| 7 | Dated this 18th day of July, 2019. |

_____
Dominic W. Lanza
United States District Judge